**Nancy L. BARTA, Plaintiff.**

v.

**SEARS, ROEBUCK AND CO., Defendant.**

**No. CIV.A. 3:03CV408.**

United States District Court, E.D. Virginia, Richmond Division.

Jan. 23, 2004.

---

John B. Mann, Levit & Mann PC, Richmond, VA, for Plaintiff.

James B. Spears, Jr., John D. Cole, Haynsworth, Baldwin, Johnson & Greaves LLC, Charlotte, NC, S. Miles Dumville, Travis Aaron Sabalewski, Reed Smith LLP, Richmond, VA, for Defendant.

## *MEMORANDUM OPINION*

SPENCER, District Judge.

This Matter comes before the Court on Cross Motions for Summary Judgment, Plaintiff's Two Motions to Strike, and Plaintiff's and Defendant's Discovery Motions. For the reasons stated below Plaintiff's Motion for Partial Summary Judgment is DENIED, both of Plaintiff's Motions to Strike are DENIED, Defendant's Motion for Summary Judgment is DENIED, Plaintiff's Motion for Extra Interrogatories is DENIED, and Defendant's Motion to Strike Plaintiff's Experts is DENIED in part and GRANTED in part.

### I.

Plaintiff Nancy L. Barta ("Plaintiff") suffers from albinism. Albinism is a congenital absence of pigment in the skin, hair, and eyes due to a lack of melanin. The Albinism condition results in intolerance to bright light, involuntary rapid eye movement, poor vision, pink eyes, white hair, and white skin. Plaintiff's impairment is described in the report of Dr. Robert Jacey, M.D. According to Dr. Jacey, Plaintiff's vision is *correctable* only to 20/200 in both eyes with contact lenses or some other device used to improve eyesight. Plaintiff has 1/10 the visual acuity of a normal person. Dr. Jacey also explains that Plaintiff can not see, drive an automobile, read a computer screen, or perform several other functions without an accommodation.

On October 7, 1999, Plaintiff obtained a part-time job through the Virginia Department for the Blind and Visually Handicapped at Sears, Roebuck and Co. ("Defendant") as a replenisher. Plaintiff

worked in the stockroom, unloading and placing goods on the sales floor. On March 21, 2001, Defendant unilaterally changed Plaintiff's job position from replenisher to sales associate. Defendant worked as a part-time sales associate in the Women's Department of one of Defendant's stores from April 2001 until she resigned on January 28, 2002. On July 1, 2001, Defendant allegedly listed Plaintiff as disabled on its Accommodation/Leave Log.

In Spring 2001, Plaintiff completed an associate standard availability form in which she indicated that she was only available to work 16 hours per week. Plaintiff's available hours were allegedly limited because of the availability of transportation. Part-time associates at Sears are not guaranteed a minimum number of hours of work per week and the scheduling of associates' hours is the responsibility of the department or unit manager.

Sales associates are responsible for working with customers and assisting them in merchandise selection, completing sales transactions, and replenishing merchandise. Because Plaintiff presented herself as having a visual limitation, she was never required to use the cash register as part of her job as a sales associate. In fact, Plaintiff alleges that she informed several managers that she could not read the computer monitors and that the Department for the Visually Handicapped could provide Defendant with anything needed to do her job, i.e. a talking register, a bigger monitor, or Zoom text loaded onto the computer. Plaintiff alleges that Defendant rejected her proposal to obtain free equipment for the visually impaired. In that Plaintiff was not required to use the cash register as part of her job, she was also not required to take store training on the use of the register.

Plaintiff's hours were consistent until January 2002. The reduction of Plaintiff's hours and the reasoning behind that reduction are at the heart of Plaintiff's discrimination claim under the Americans with Disabilities Act ("ADA"). Defendant argues that Plaintiff and all of the other part-time sales associates all had their hours reduced in January of 2002. Plaintiff allegedly worked 45.5 hours in December of 2001 and received no hours for the first two (2) weeks of January 2002. Plaintiff alleges that she was only scheduled for one (1) day from 9:00 am to 12:30 pm in the entire month of January. Over the objection of Ms. Jill Dewey, Plaintiff was allegedly permitted to work two (2) additional non-scheduled days during January.

It is undisputed that Plaintiff was approached by Ms. Jill Dewey, the Human Resources Director, about computer training. Defendant alleges that Ms. Dewey approached Plaintiff out of concern for her reduction of hours. Defendant alleges that Ms. Dewey offered to provide Plaintiff with computer and register training as an opportunity to make up to eight (8) hours of regular pay a week during the down time. The training was self-paced on a computer in the store's training room. Defendant alleges that Ms. Dewey's offer was entirely gratuitous and was not a requirement of Plaintiff's job.

Plaintiff alleges that Ms. Dewey demanded that she take training on the computers and begin using the sales registers. Plaintiff allegedly tried to explain her visual impairment again to Ms. Dewey and explained that other accommodations were available through the Department for the Visually Handicapped. Plaintiff alleges that Ms. Dewey rejected the accommodation idea and explained that she would receive no more work hours until she took the computer training and learned to work the register. Plaintiff alleges that her immediate supervisor attempted to give her

other unscheduled hours, which Ms. Dewey objected to.

Plaintiff also alleges that she went to Ms. Dewey during this time and asked her to fill out a rental calculation form for her landlord. Ms. Dewey refused to sign the calculation form. Plaintiff lived in Section VIII housing subsidized by HUD and her rent varied each month based on her monthly income. Plaintiff alleges that she routinely had the form filled out by managers at Sears and that without the updated information regarding her January 2002 hours, her rent would be charged based on the 45.5 hours she worked in December. Plaintiff alleges that she went to Ms. Dewey a second time attempting to explain her rental situation and again asked her to fill out the form. Ms. Dewey refused again.

Defendant alleges that Ms. Dewey may have misunderstood Plaintiff's request and simply did not feel comfortable writing a letter to Plaintiff's landlord guaranteeing that she would not work over eight (8) hours per week. Defendant alleges that the reduction in hours was only temporary during their down season and Ms. Dewey felt it was inappropriate to represent to Plaintiff's landlord that her hours would remain reduced. Defendant alleges that Ms. Dewey provided Plaintiff with an Employment Verification phone number which is an automated telephone service that could verify that Plaintiff was in fact employed with Sears.

Plaintiff alleges that she continually explained to Ms. Dewey that she was physically incapable of engaging in the computer training and that her hours should not be restricted based on her limitation. Plaintiff alleges that Ms. Dewey finally told her not to return to work until she spoke with Kevin Hillenbrand.

On January 28, 2002, Plaintiff submitted a handwritten resignation from her position with Defendant, effective immediately. Plaintiff alleges that she resigned because she felt that was the only way to have her rent reduced to reflect her income. Plaintiff filed a charge of discrimination under the ADA. The EEOC performed an investigation and certified Plaintiff's suit.

## II.

Under Rule 56(b) of the Federal Rules of Civil Procedure, a court considering a motion for summary judgment must consider the entire record in the light most favorable to the non-moving party. To succeed on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that it is therefore entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(c) requires the Court to enter summary judgment for the moving party where the non-moving party fails to make a sufficient factual showing on an essential element of the case for which that party has the burden of proof. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### A. *Plaintiff's Motion for Partial Summary Judgment*

Plaintiff moves for Partial Summary Judgment arguing that there is no genuine issue of fact as to whether she is a "disabled person" under the Americans with Disability Act ("ADA"). The ADA defines a disabled person as an individual who has: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A plaintiff needs only to establish one of the three listed factors to demonstrate that he or she is within the protected class under the ADA.

■ The Untied States Supreme Court has explained that a determination of whether a person is or is not within the ADA's definition of disabled, requires an individualized assessment of the impact that the condition has on that individual's life activities. *Toyota Motor, Mfg., Ky. v. Williams,* 534 U.S. 184, 198–99, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). While the term "substantially limits" is not defined in the law, EEOC regulations provide that a comparison should be made with what the person can and cannot do with their impairment and what an average non-impaired person is capable of doing. The Supreme Court has also explained that to be substantially limiting, an impairment must be permanent or long-term and it must "prevent[ ] or severely restrict[ ] the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198, 122 S.Ct. 681.

Plaintiff argues that her eyesight is a physical impairment per se, automatically making her a disabled person under the ADA. Plaintiff points to the fact that she falls within the Social Security Administration's definition of "statutory blindness." Under the Social Security Regulations, a person is considered statutorily blind if they have a "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens." Plaintiff argues that Dr. Jacey's medical records illustrate that Plaintiff has a visual acuity of less than 20/200 which can only be adjusted to 20/200 with correcting lenses. Plaintiff argues that her physical condition is permanent and that it is uncontested that she can not see certain things without the use of some accommodation. Plaintiff, however, ends her inquiry into whether she is disabled at this point and does not engage in an individualized assessment of the impact her condition has had on her life activities.

Even in cases where the Plaintiff has been diagnosed with severe visual problems, the Supreme Court has explained that those individuals are not invariably disabled, but still must engage in an individual inquiry into their ability to compensate for the impairment. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555, 566–67, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999). The Court in *Albertson's,* however, explained that individuals with severe visual impairments do not have an onerous burden and that they "ordinarily will meet the Act's definition of disability." *Id.* at 567, 119 S.Ct. 2162.

Plaintiff relies on the affidavit of Dr. Robert W. Jacey and a letter from Kimberly M. Jennings, of the Virginia Department for the Blind and Vision Impaired in support of the proposition that she has engaged in an individualized assessment of the impact her condition has had on her life. Dr. Jacey's affidavit states that "Ms. Barta's daily life activities, which have been affected by her visual disability, are driving, sewing, and unable to read small print without the aid of a magnifying glass or visual aid readers." Ms. Jennings' letter does not explain the actual impact Plaintiff's impairment has had on her life activities but simply states that Plaintiff has been classified as statutorily blind by the Social Security Administration.

Defendant cites the Eleventh Circuit case of *Chenoweth v. Hillsborough County,* 250 F.3d 1328 (11th Cir.2001), which held that driving is generally not considered a major life activity. *Id.* at 1329–30. Defendant also cites the Second Circuit case of *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635 (2d Cir.1998), which held that getting to and from work is not itself a separate major life activity. *Id.* at 643. Defendant also argues that if driving is not considered a major life activity then sewing cannot be considered a major life activ-

ity either. *Faroh v. Sedgwick County*, 2002 WL 1627701, 2002 U.S. Dist. LEXIS 13491 (D.Kan. July 12, 2002) (holding that recreational activities such as fishing competitively, bow hunting, mountain biking, weight lifting, and rollerblading are not major life activities.).

Defendant is correct in its argument that the activities listed in Dr. Jacey's report are not major life activities. The EEOC lists major life activities as being things such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2. Plaintiff simply lists her impairment and has not illustrated how her impairment has affected her life. Plaintiff has not alleged sufficient evidence to support a finding that she is disabled as a matter of law. Contrary to what both Plaintiff and Defendant argue, there is still a genuine issue of material fact as to whether Plaintiff is a "disabled person" under the ADA and Plaintiff's Motion for Partial Summary Judgment must therefore be denied.

### B. *Plaintiff' Motion to Strike Defendant's Response to its Motion for Partial SJ*

Plaintiff moves to Strike Defendant's Response to its Motion for Partial Summary Judgment arguing that Defendant failed to comply with Local Rule of Practice 56(B). The United States District Court for the Eastern District of Virginia Local Rule of Practice 56(B) provides that a brief in response to a Motion for Summary Judgment "shall include a specifically captioned section listing all material facts as to which it contends that there exists a genuine issue necessary to be litigated ...." Plaintiff argues that Defendant failed to file such a response and failed to contest the facts stated in its Motion for Summary Judgment.

Local Rule 56(B) does not apply to the unique situation presented by Plaintiff's Partial Motion for Summary Judgment. Plaintiff's Motion sought a pre-trial judicial determination that she is a protected individual under the ADA. Defendant responded to Plaintiff's Motion and opposed it on the basis that Plaintiff could not satisfy her burden and show that she is a protected individual under the ADA. Defendant responded to the actual issues raised in Plaintiff's Partial Summary Judgment Motion, making it clear to the Court which alleged facts it opposed. Furthermore, Plaintiff cites to deficiencies in Defendant's brief while Plaintiff's brief contains Rule 56(B) deficiencies of its own. Therefore, Plaintiff's Motion to Strike Defendant's Response is denied.

### C. *Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment*

Plaintiff moves to strike Defendant's Motion for Summary Judgment for failure to comply with this Court's September 11, 2003 Scheduling and Jury Pretrial Order ("pretrial order"). The parties submitted a Rule 26(f) agreement on September 8, 2003. The Rule 26(f) agreement provided that all dispositive motions in this matter were to be filed by December 15, 2003. On September 11, 2003 this Court entered its Scheduling and Jury Pretrial Order which essentially required that all dispositive motions be filed by December 17, 2003. Defendant filed its Motion for Summary Judgment on December 17, 2003.

The parties' previously filed discovery plan did not supercede this Court's September 11, 2003 Scheduling and Jury Pretrial Order. The discovery plan was never adopted by this Court and the parties were bound by this Court's Order. Defendant's December 17, 2003, Motion for Summary

Judgment was timely under this Court's Scheduling and Pretrial Order, therefore Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment is hereby denied. Defendant's request for costs is also denied.

### D. *Defendant's Motion for Summary Judgment*

■■■ In cases of alleged disparate treatment, "[p]roof of discriminatory motive is critical." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In the absence of direct evidence of discrimination, a plaintiff must rely on the indirect, burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, a plaintiff must prove, by a preponderance of the evidence, the existence of facts that establish a prima facie case of unlawful discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455–56 (4th Cir. 1989); *EEOC v. Western Elec. Co.*, 713 F.2d 1011, 1014 (4th Cir.1983). Once the employer comes forward with a legitimate reason to explain its decision, the burden shifts back to the Plaintiff to show that the articulated reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

### 1. *Whether Plaintiff can establish a prima facie case under the ADA*

■■ To establish a prima facie case of discrimination under the ADA, Plaintiff must establish that: (1) she was a member of the protected class, i.e. a "qualified individual with a disability."; (2) she suffered an adverse employment action, i.e. an actu-

al or constructive discharge; (3) that at the time of her resignation she was performing her job to her employer's satisfaction; and (4) that the alleged adverse employment occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Runnebaum v. NationsBank of Maryland, N.A.*, 123 F.3d 156, 164 (4th Cir.1997).

Defendant argues that Plaintiff can not establish she is a member of the protected class because she cannot establish that she has a disability. As previously stated both Defendant and Plaintiff have raised sufficient factual allegations to establish that there is still a genuine issue of material fact as to whether Plaintiff has a disability under the ADA.

■■ Defendant also argues that Plaintiff cannot establish that she suffered an adverse employment action, i.e. that she was constructively discharged. To establish constructive discharge a plaintiff must show that a defendant created intolerable working conditions in a deliberate effort to force her to resign. *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir.1994). Whether such circumstances are presented is judged on the objective standard of what a reasonable person could endure, not on the plaintiff's subjective perceptions. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985).

■■ Plaintiff alleges that her hours were reduced and that she was informed that she would receive no new hours because she couldn't use the computer and cash register, things which she is physically incapable of doing. Plaintiff also alleges that Defendant refused to give the information verifying her work hours needed to establish her proper rental rate. In essence Plaintiff alleges that both her income was cut off and her ability to provide for her shelter were cut off because she would not do what she was incapable of doing. Plaintiff's allegations are sufficient

to raise a genuine issue of fact regarding whether intolerable working conditions were created in a deliberate effort to force her to resign.

Defendant makes several arguments about why the working environment was not intolerable. These arguments, however, are irrelevant to the current Motion for Summary Judgment. If anything, Defendant's arguments establish that there is a genuine issue of material fact in this matter that should be resolved by a jury.

### 2. Whether Plaintiff can establish that Defendant's explanation is a pretext

 Defendant argues that it has a legitimate, nondiscriminatory explanation for any alleged adverse employment action and that Plaintiff cannot establish that it is pretextual. Defendant argues that the uncontroverted evidence establishes that available hours for part-time associates fluctuate throughout the sales year. Defendant argues that after most of the merchandise preparation for Christmas has been finished the hours typically decrease and do not increase again until after January.

Defendant's arguments however, are not sufficient to grant it summary judgment in this matter. Plaintiff has alleged sufficient facts to meet a prima facie case of constructive discharge in violation of the ADA. Although Plaintiff was not fired, there are genuine issues of dispute that can not be resolved on Summary Judgment.

## III.

### Plaintiff's and Defendant's Pending Discovery Motions

#### A. Plaintiff's Motion to Exceed Limitation on Interrogatories

 Plaintiff moves to exceed the limitation of 25 interrogatories and request that the Court allow her to file 10 additional interrogatories pursuant to Federal Rule of Civil Procedure 33. Plaintiff has already exceeded this Court's limitation of thirty (30) interrogatories without first obtaining permission from the Court. Plaintiff filed 25 interrogatories in her First request and an additional 5 interrogatories in her second request. Thereafter, Plaintiff propounded four (4) additional interrogatories which Defendant objected to. Defendant also alleges that Plaintiff has already received the information requested. In that Plaintiff has already received all the information she seeks, there is no reason for the Court to allow Plaintiff to propound additional interrogatories and Plaintiff's Motion to Exceed the Limitation on Interrogatories is denied.

#### B. Defendant's Motion to Strike Plaintiff's Expert Designation

Defendant moves to strike Plaintiff's expert designations, or in the alternative, to compel Plaintiff to comply with Rule 26(a)(2) and require Plaintiff's counsel to pay Defendant's costs and expenses incurred in filing this motion and in taking the depositions of Plaintiff's witnesses.

#### 1. Facts

This Court's Scheduling and Pretrial Order set dates for the designation of experts. Pursuant to the Court's Order each party was required to identify all persons it expected to call as expert witnesses and file a report complying with Fed.R.Civ.P. 26(a) on or before ninety (90) days before trial, or in this case by October 28, 2003. Defendant alleges that as of December 3, 2003, Plaintiff had not served Defendant with any expert witness reports which comply with Rule 26(a)(2).

#### 2. Argument

 Defendant argues that Plaintiff has failed to comply with the Court's pretrial order and submit reports for its experts in accordance with Federal Rule of

Civ. P. 26(a)(2). Rule 26(a)(2) provides that:

> The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. 26(a)(2)(B).

Plaintiff submitted a letter from Dr. Jacey and Plaintiff's medical file but no formal written report for Dr. Jacey. Plaintiff submitted a report for Mr. Peterson,' the report, however, did not include his formal opinion or the basis for it. Plaintiff only submitted a resume for Ms. Allen but Plaintiff alleges that she informed Defendant in advance that she no longer planned to call Ms. Allen as a witness. Plaintiff sent no information for Ms. Kimberly Jennings.

Defendant eventually received signed reports for both Dr. Jacey and Mr. Peterson. The reports Defendant received substantially comply with the requirements of Rule 26(a)(2). Defendant also had the opportunity to fully depose Dr. Jacey and Mr. Peterson, and explore the full nature of their opinions and qualifications. Defendant has all the information Rule 26(a)(2) provides for and has not been prejudiced by any minor delays it may have experienced in receiving this information.

Defendant has not, however, received the information it is entitled to for Ms. Kimberly Jennings. Plaintiff allegedly failed to send any report or other information to Defendant for Ms. Jennings. Plaintiff has deliberately chosen not to comply with Rule 26(a)(2) with regard to Ms. Jennings and can not now benefit from her testimony at trial. Defendant's Motion to Strike Plaintiff's expert Kimberly Jennings must therefore be granted and Ms. Jennings is hereby prevented from testifying in this matter. Defendant's Motion to strike experts Dr. Jacey and Mr. Peterson are denied and Defendant's Motion for costs is also denied.

### IV.

For the reasons previously stated, Plaintiff's Motion for Partial Summary Judgment is DENIED, both of Plaintiff's Motions to Strike are DENIED, Defendant's Motion for Summary Judgment is DENIED, Plaintiff's Motion for Extra Interrogatories is DENIED, and Defendant's Motion to Strike Plaintiff's Experts is DENIED in part and GRANTED in part.

### *ORDER*

THIS MATTER comes before the Court on Cross Motions for Summary Judgment, Plaintiff's Two Motions to Strike, and Plaintiff's and Defendant's Discovery Motions. For the reasons stated in the accompanying Memorandum Opinion, Plaintiff's Motion for Partial Summary Judgment is DENIED, both of Plaintiff's Motions to Strike are DENIED, Defendant's Motion for Summary Judgment is DENIED, Plaintiff's Motion for Extra Interrogatories is DENIED, and Defendant's Motion to Strike Plaintiff's Experts is DENIED in part and GRANTED in part..

Let the Clerk send a copy of this Order to all parties of record.

It is SO ORDERED.