

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-22-2002

# Gagliardo v. Connaught Lab Inc

Precedential or Non-Precedential: Precedential

Docket No. 01-4045

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Gagliardo v. Connaught Lab Inc" (2002). *2002 Decisions.* Paper 761.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/761

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed November 22, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4045

JANE A. GAGLIARDO;
JOHN GAGLIARDO

v.

CONNAUGHT LABORATORIES, INC.,
        Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 97-cv-00768)
District Judge: The Honorable Yvette Kane

Submitted Under Third Circuit LAR 34.1(a)
October 29, 2002

Before: NYGAARD, GARTH and MICHEL,*
Circuit Judges.

(Filed: November 22, 2002)

_____

* Honorable Paul R. Michel, Circuit Judge, United States Court of
Appeals for the Federal Circuit, sitting by designation.


        Carl J. Greco, Esq.
        4th Floor
        327 North Washington Avenue
        Professional Arts Building
        Scranton, PA 18503
         Counsel for Appellant

        Patrick J. Reilly, Esq.
        Gross McGinley LaBarre & Eaton
        33 South 7th Street
        PO Box 4060
        Allentown, PA 18105
         Counsel for Appellees

OPINION OF THE COURT

MICHEL, Circuit Judge.

Plaintiff-appellee Jane Gagliardo ("Gagliardo") sued
Connaught Laboratories, Inc. ("CLI") for employment
discrimination in the United States District Court for the
Middle District of Pennsylvania. After a trial, the jury found
CLI's dismissal of Gagliardo violated both the Americans

with Disabilities Act ("ADA"), 42 U.S.C. S 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. S 955 et seq., and awarded Gagliardo 2.5 million dollars. CLI appeals the district court's denial of its motion for judgment as a matter of law ("JMOL"), denial of its motion for a new trial or remittitur, and denial in part of its motion to alter or amend the judgment to comply with 42 U.S.C. S 1981a(b)(3)(D) (limiting the damage amount recoverable under the ADA).

We affirm the district court's judgment in all respects challenged before us.

I.

Gagliardo began working for CLI in 1987. In 1992 she became a customer account representative and continued in that capacity until her dismissal. Gagliardo's responsibilities in that position included receiving calls,

2

handling accounts, answering customers' questions, and supporting the sales force. Gagliardo was also responsible for a special project -- the handling of military orders. For most of her years with CLI, Gagliardo was by all accounts a capable employee.

Gagliardo's life began to change in 1992 or 1994 when she was diagnosed with Multiple Sclerosis ("MS").[1] Gagliardo's symptoms varied over time and included muscle spasms, fatigue, and numbness in her hands, back, and legs. The most severe of these symptoms was Gagliardo's fatigue. The fatigue affected her ability to think, focus, and remember. All of Gagliardo's symptoms were subject to being exacerbated by stress.

These symptoms began affecting her at work in 1995, after which she requested the lowering of the temperature in her workspace as an accommodation. Thereafter, Gagliardo began to make mistakes at work. In November of 1995 Gagliardo discussed the burden of her military orders project with her then-supervisor, Wayne Neveling, expressing concern that this burden was adversely affecting her ability to do other required work. After that conversation, Neveling endeavored to analyze the effect of the military orders on Gagliardo's performance -- a task that was never completed.

Beginning in February 1996, Gagliardo's new supervisor, Judith Stout, took Gagliardo through the CLI disciplinary process for poor job performance. Getting first an oral warning, Gagliardo then received a written caution, retraining, probation, and ultimately dismissal. Throughout this process, Gagliardo continued to believe she could reduce her mistakes if the military orders responsibility was taken away from her, but this never happened. Also during this process, Gagliardo met with Christine Kirby, CLI's manager of employee communications and human

resources information systems. It was Kirby's responsibility to counsel CLI employees and managers on the

_____

1. MS is a permanent disorder of the brain and spinal cord in which the body identifies the covers of the nerves as foreign and attacks them. As a result, the nervous system of the afflicted person does not function as it should.

3

requirements of the ADA. In Gagliardo's conversations with Kirby, Gagliardo indicated that her MS was interfering with her job performance. Kirby, herself an MS sufferer, later acknowledged that removal of the military project would have been a reasonable accommodation, but also acknowledged that CLI had not provided that accommodation. CLI terminated Gagliardo's employment on May 29, 1996 because of her continued errors and failure to follow procedures.

In July of 1996 Gagliardo filed a complaint alleging disability and age discrimination with the Pennsylvania Human Relations Commission. Gagliardo later sued CLI in the United States District Court for the Middle District of Pennsylvania alleging discrimination under both the ADA and the PHRA. The case was tried to a jury in September 2000.

The jury returned a verdict in favor of Gagliardo on both the ADA and PHRA claims and awarded her $2,000,000 in compensatory damages and $500,000 in punitive damages. After trial CLI filed a motion to alter or amend judgment to comply with 42 U.S.C. S 1981a, motion for JMOL, and a motion for a new trial or remittitur. The district court granted in part and denied in part the motion to alter or amend (lowering the punitive damages award to $300,000), but denied CLI's other motions. The court's decisions were filed on September 28, 2001.

On October 29, 2001 CLI appealed to this court. We have jurisdiction pursuant to 28 U.S.C. S 1291.

II.

We have plenary review of a district court's order denying JMOL. Warren v. Reading Sch. Dist., 278 F.3d 163, 168 (3d Cir. 2002). Accordingly, we apply those standards that the district court applied. JMOL under Fed. R. Civ. P. 50 is appropriate only where, "viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability." Id. (quoting Fultz v. Dunn, 165 F.3d 215, 218 (3d Cir. 1998)). On appeal, CLI asserts that JMOL as to

4

liability was appropriate because, they argued, Gagliardo failed to make out a prima facie case under the ADA and PHRA.2

To establish a prima facie case under the ADA a plaintiff must show: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job; and (3) she has suffered an adverse employment decision because of discrimination. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). CLI challenges only the first element, that being whether Gagliardo was disabled.

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual . . . or (C) being regarded as having such an impairment." 42 U.S.C. SS 12102(2)(A)-(C) (2000). At trial, Gagliardo presented evidence relevant to both (A) and (C) above, and on appeal CLI challenges its sufficiency as to both claims. With regard to (A), the district court, in its order denying JMOL, determined that "[t]he chronic fatigue and resulting forgetfulness brought on by multiple sclerosis prevented Plaintiff from participating in major life activities of thinking and remembering." In addition, as to (C), the court concluded "[t]estimony of company representatives established that Plaintiff had a record of an impairment and was regarded as disabled." On appeal, CLI fails to persuade us that the district court erred in its determinations that sufficient evidence supported the jury's verdict.

CLI first argues that Gagliardo offered no proof she was limited in any major life activity. Gagliardo, however, submitted evidence she was limited in the major life activities of concentrating and remembering (more generally, cognitive function). Our court has held that such activities are major life activities. See Taylor , 184 F.3d at

_____

2. Because liability under the PHRA is premised upon language similar to that of the ADA and because that language is generally interpreted in accordance with the judicial construction of the ADA, we address only the language of the ADA in our analysis. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

5

307 (holding thinking is a major life activity); see also EEOC Guidelines, 29 C.F.R. S 1630.2(i), and Department of Health and Human Services Rehabilitation Act Regulations, 45 C.F.R. S 84.3(j)(2)(ii) (listing examples of major life activities, including learning and working).

CLI next argues that the testimony fails to show Gagliardo was "substantially limited" in the activities of concentrating and remembering. CLI cites the recent Supreme Court case of Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 122 S. Ct. 681 (2002), in which

the Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment must also be permanent or long-term." Id. at 691 (citing 29 C.F.R. SS 1630.2(j)(2)(ii)-(iii) (2001)). In the EEOC's regulations, "substantially limited" is defined as: "Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R.S 1630.2(j). The regulations list several factors for evaluating whether someone is "substantially limited": "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. S 1630.2(j)(2).

Contrary to CLI's assertions, we hold that Gagliardo did present witnesses from whose testimony a jury could reasonably conclude she was substantially limited in her ability to concentrate and remember. First, Gagliardo's physician, Dr. Barbour, testified that there was no cure for MS and that the MS produced Gagliardo's fatigue. Dr. Barbour also expressed his opinion as an expert that Gagliardo was substantially limited in her ability to, among other things, learn, work, and think. Second, Gagliardo testified she experienced muscle spasms and fatigue. Third, four of Gagliardo's coworkers testified as to her fatigue and

6

muscle spasms. Fourth, Gagliardo produced evidence that her supervisor recognized her memory and concentration problems, having provided Gagliardo with video and audio tapes to assist Gagliardo in overcoming her memory problems. Lastly, Gagliardo's son and her husband similarly testified that she was often fatigued and had trouble concentrating and focusing.

Therefore, we conclude that there was sufficient evidence that Gagliardo was "disabled" within the meaning of the ADA to support the jury's verdict. Because of this conclusion, we need not address Gagliardo's alternative theory that CLI regarded her as being disabled. We affirm the district court's denial of CLI's motion for JMOL.

III.

We review de novo a district court's interpretation of a statute. Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 202 (3d Cir. 1998). The statute at issue limits the damages available to a claimant under certain federal statutes, including the ADA. 42 U.S.C. S 1981a(a)(2) (2000). The "cap" applies to both punitive and compensatory damages and depends on the number of persons employed

by the defendant. Id. S 1981a(b)(3). The specific cap applicable in this case is $300,000. Id.S 1981a(b)(3)(D). Gagliardo sued under the ADA, which is subject to the cap, and the PHRA, which is not. The jury did not apportion damages between the claims, instead granting a general verdict of $2,000,000 in compensatory and $500,000 in punitive damages. On CLI's motion to alter or amend the judgment, the district court applied the federal cap to only the punitive damages,3 lowering them to $300,000, and apportioned all the compensatory damages to Gagliardo's PHRA claim. Thus, on appeal we are presented with the issue of whether the statutory cap of S 1981a applies to the entirety of the damages where the jury awarded them

_____

3. The district court rightly concluded that the jury awarded the punitive damages under plaintiff 's ADA claim -- and therefore subjected them to the S 1981a cap -- because punitive damages are not available under the PHRA. See Hoy v. Angelone, 691 A.2d 476, 483 (Pa. Super. Ct. 1997).

unapportioned between a capped federal claim and a virtually identical, uncapped state claim.

On appeal, CLI argues the district court's apportionment constituted reversible error because, according to CLI, S 1981a applies to all similar claims in a single lawsuit. On this issue of first impression in our circuit, we instead accept the sound reasoning of the district court and two of our sister circuits and hold that S 1981a does not prevent a claimant from recovering greater damages under a state law claim that is virtually identical to a capped federal claim. Passantino v. Johnson & Johnson, 212 F.3d 493, 510 (9th Cir. 2000) (discussing Title VII and the Washington Law Against Discrimination); Martini v. Fed. Nat'l Mortgage Ass'n, 178 F.3d 1336, 1349-50 (D.C. Cir. 1999) (discussing Title VII and the District of Columbia Human Rights Act). In Passantino and Martini, the courts focused on the effect a broader application of S 1981a would have on recovery under state law claims corresponding to capped federal claims. Both courts recognized the federal law at issue, Title VII, contained an express prohibition against limiting state remedies. Passantino, 212 F.3d at 510; Martini, 178 F.3d at 1349-50. Importantly, the ADA also contains such a prohibition: "Nothing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State . . . that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter." 42 U.S.C. S 12201(b) (2000). Here, the PHRA, with its similar language and applicability, clearly provides a cause of action nearly identical to that of the ADA. The fact that the PHRA does not contain a damages cap further indicates that it was intended to provide a remedy beyond its federal counterpart, the ADA. As the courts in Passantino and Martini recognized, subjecting such state law claims to the federal cap would effectively limit a state's ability to provide for greater recovery than allowed under the corresponding

federal law. Passantino, 212 F.3d at 510; Martini, 178 F.3d at 1349-50. Imposing such a limitation would violate the federal law's prohibition on limiting state remedies. Id.

As noted by the Ninth Circuit in Passantino and the trial court, a district court's obligation to uphold lawful jury

awards whenever reasonable further supports the apportionment of damages between the state and federal claims present here. Passantino, 212 F.3d at 510; see also Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir. 1989). In this case, given the similarity of the claims and the jury's unapportioned award of damages, it is reasonable to infer that the jury intended to award its entire verdict to Gagliardo. Because there is no cap under the PHRA, it was entirely reasonable for the trial court to apportion the damages so as to allow Gagliardo to recover the entire jury award, as reduced by the district court.

In light of this reasoning, we are not persuaded by CLI's offering of contrary authority. Two of these cases are easily distinguishable because they involve multiple federal claims. Smith v. Chicago Sch. Reform Bd., 165 F.3d 1142, 1148 (7th Cir. 1999) (discussing claims under 42 U.S.C. S 1981 and Title VII); Hudson v. Reno, 130 F.3d 1193, 1196 (6th Cir. 1997) (analyzing claims under Title VII, the Equal Pay Act, 29 U.S.C. S 206(d), and the Privacy Act, 5 U.S.C. S 552a). Moreover, these cases simply do not stand for the propositions CLI argues. Indeed, the issue in Smith and Hudson was whether a party could recover under separate and distinct episodes of discrimination in a single lawsuit under a federal cause of action that was subject to the S 1981a cap. Smith, 165 F.3d at 1150; Hudson, 130 F.3d at 1199. In Hudson, the district court had found in favor of the plaintiff only on her Title VII claims; thus the issue before the Sixth Circuit was whether the S 1981a cap applied to each claim or to the lawsuit as a whole. Hudson, 130 F.3d at 1196, 1199-1200 (denying plaintiff recovery of damages above cap where jury awarded $250,000 for sex discrimination, $500,000 for retaliation, and $750,000 for the constructive discharge). Similarly in Smith , the Seventh Circuit did not remand the plaintiff 's S 1981 claim, holding instead that her evidence could not support such a claim. Smith, 165 F.3d at 1149. Therefore, its discussion of S 1981a was limited to whether the cap applied to each claim or incident of discrimination under Title VII. Id. at 1150 (denying recovery beyond the S 1981a cap where plaintiff contended she had three claims of discrimination -- one for each school that discriminated against her); see also id. at 1148 ("The bulk of the damages depends on

S 1981, because a Title VII award is subject to a statutory cap.") Both courts relied on the plain language of S 1981a to conclude that the cap limited recovery per lawsuit under

the capped federal statute, rather than per claim. Smith, 165 F.3d at 1150-51; Hudson, 130 F.3d at 1200-01. The issue presented in the case at bar is wholly different. Gagliardo is not attempting to circumvent the damages cap by asserting multiple claims of discrimination under a federal law; rather she urges the apportionment of the jury's verdict between two nearly identical causes of action, one under a federal law and one under a state law.

The one case CLI cites that is on point is Oliver v. Cole Gift Centers, Inc., 85 F. Supp. 2d 109 (D. Conn. 2000). In Oliver, the district court, on defendant's post-verdict motion, declined to apportion damages between Title VII and the Connecticut Fair Employment Practices Act. Id. at 114. The court acknowledged it was going against the weight of authority, but found apportionment would be inappropriate because it "would contravene the policies underlying both the Congressional limitation on recovery under Title VII and the limitation on punitive damages under Connecticut law." Id. Although CLI urges us to adopt the Oliver court's reasoning and holding, we decline. Rather than contravening any federal or state policy, we instead conclude that our decision "to permit [Gagliardo] to benefit from the remedy provided by state law does not conflict with the congressional purpose of making [Federal] employment discrimination awards reasonable, and is expressly provided for in the statute." Luciano v. Olsten Corp., 912 F. Supp. 663, 675 (E.D.N.Y. 1996).

In sum, we hold that S 1981a does not prohibit apportionment of damages between claims, one under a capped federal statute and another under a corresponding uncapped state statute, so that the verdict winner gets the maximum amount of the jury award that is legally available. We base our holding on the ADA's explicit language which prohibits limiting state remedies, the policy of upholding reasonable jury verdicts, and the power of persuasive authority from two other circuit courts.

10

IV.

We review a district court's denial of a motion for a new trial for abuse of discretion. Olefins Trading, Inc. v. Han Yang Chem. Corp., 9 F.3d 282, 289 (3d Cir. 1993). Similarly, we review a district court's denial of a motion for remittitur for an abuse of discretion. Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1100 (3d Cir. 1995). A court may grant a new trial "where a miscarriage of justice would result if the verdict were to stand." Olefins, 9 F.3d at 289 (citations and quotations omitted). On appeal, CLI asserts three grounds for a new trial: (1) the trial court's failure to adopt two proposed jury instructions; (2) the jury's improper award of punitive damages; and (3) the jury's award of damages was so disproportionate to the injury that it "shocks the conscience of the court." We address each in turn.

A.

CLI takes issue with the district court's refusal to adopt two of its proposed jury instructions. First, CLI states that the court should have instructed the jury that Gagliardo was an "at-will employee" and therefore CLI was free to terminate her employment so long as it wasn't for discriminatory reasons. As the court below noted, the authority CLI cited does not require a district court to give such a charge. See Pivirotto v. Innovative Sys., Inc., 191 F.3d 344 (3d Cir. 1999). In Pivirotto the plaintiff in a Title VII case argued the district court's inclusion of a similar charge constituted reversible error. Id. at 350. This court held otherwise, noting that although the inclusion of an at-will instruction was not erroneous, "[t]he better practice may be for a district court to not give such an instruction in a statutory discrimination suit." Id. at 350 n.2. Thus, no cited authority holds that inclusion of this charge is a legal necessity. Further, CLI offers no specific reason or facts demonstrating that this charge was necessary in this case.

Second, CLI contends the district court erred in not instructing the jury that the mere diagnosis of MS does not establish a statutory disability. CLI claims this instruction was necessary because the court did instruct the jury that

11

MS is an impairment within the meaning of the ADA. This instruction was not prejudicially erroneous, however, because the court also instructed the jury that the disability must substantially limit a major life activity. Hence, the jury was fully aware that the impairment itself did not establish a disability within the meaning of the ADA. Looking at the instructions as a whole, we hold the district court did not abuse its discretion by failing to include the requested clarifying instruction.

B.

CLI also claims there was insufficient evidence relevant to punitive damages to submit the question to the jury and that the jury failed to follow the instruction in awarding such damages. Punitive damages are available under the ADA when "the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference." 42 U.S.C. S 1981a(b)(1) (2000). These terms focus on the employer's state of mind and require that "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535-36 (1999).

As the trial court concluded, Gagliardo produced sufficient evidence of CLI's reckless indifference toward her statutory disability rights. Gagliardo presented evidence that CLI -- through its employees -- was aware she had MS. For example, Gagliardo produced evidence that her last supervisor, Judith Stout, and CLI's human resources

representative, Christine Kirby, discussed Gagliardo's MS prior to Gagliardo's dismissal. Gagliardo also produced evidence that Stout requested information concerning MS. She also offered evidence that she advised CLI of the limitations her condition imposed on her ability to perform her job and that a high level CLI employee -- herself an MS sufferer -- counseled Gagliardo regarding the impact of the disease. In addition, Gagliardo produced evidence that she had requested accommodation on multiple occasions and that CLI refused to act on any of those requests. Finally, Gagliardo demonstrated that CLI was aware of her federal disability rights, as Christine Kirby testified she was

familiar with the ADA and responsible for ensuring CLI followed the ADA. In sum, there was sufficient evidence to support the jury's award of punitive damages.

C.

CLI argues chiefly that the excessiveness of the jury's award mandates a new trial or remittitur. The jury awarded $2.0 million in compensatory damages and another $500,000 (later reduced to $300,000) in punitive damages. Gagliardo's expert testified her economic loss was $450,000 so we assume the remaining $1.55 million of the jury's verdict on compensatory damages was for pain and suffering. CLI attacks only these emotional damages on appeal, arguing their excessiveness compels either a new trial or remittitur.

To recover emotional damages a plaintiff must show "a reasonable probability rather than a mere possibility that damages due to emotional distress were in fact incurred [as a result of an unlawful act]." Spence v. Bd. of Ed., 806 F.2d 1198, 1201 (3d Cir. 1986). The district court found this standard to be met because Gagliardo produced evidence from her co-workers and family demonstrating the effects her problems with CLI had on her life. This testimony tied Gagliardo's pain and suffering to her early employment problems after she was diagnosed with MS and detailed their subsequent worsening effect on her life. The testimony demonstrated the effects of the mental trauma, transforming Gagliardo from a happy and confident person to one who was withdrawn and indecisive. Because this evidence establishes a reasonable probability that Gagliardo incurred the emotional damages, we hold that the trial court did not abuse its discretion by allowing the jury's verdict to stand. See id. Therefore, we affirm the district court's denial of CLI's motion for a new trial. In addition, in light of this evidence we also hold the trial court did not abuse its discretion in finding the jury's verdict is not so excessive as to be unsupportable or offend the conscience of the court, and therefore denying remittitur. See, e.g., Gumbs v. Pueblo Intern., Inc., 823 F.2d 768, 771 (3d Cir. 1987) ("This court has noted that our review of this question is severely limited: we may disturb the district

court's determination only if the verdict is so grossly excessive as to shock the judicial conscience.") (citations and quotation marks omitted).

In sum, we affirm the district court's denial of CLI's motion for a new trial or for remittitur.

V.

For the foregoing reasons, we affirm the judgment of the district court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit