

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-4-2005

# Collins v. Prudential Inv & Ret

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2356

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Collins v. Prudential Inv & Ret" (2005). *2005 Decisions.* Paper 1587.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1587

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 03-2356

LEONA COLLINS,

Appellant

v.

PRUDENTIAL INVESTMENT AND
RETIREMENT SERVICES; PRUDENTIAL
INSURANCE COMPANY OF AMERICA

Appeal from the United States District Court
for the Middle District of Pennsylvania
(Civil No. 01-cv-01765)
District Judge: Hon. A. Richard Caputo

Submitted Under Third Circuit LAR 34.1(a)
November 19, 2004

Before: SCIRICA, *Chief Judge*, McKEE and
CHERTOFF, *Circuit Judges*

(Opinion filed: January 4, 2005)

OPINION

McKEE, *Circuit Judge*.

Leona Collins appeals the district court's grant of judgment as a matter of law in

favor of her former employer, Prudential Investment and Retirement Services, on the suit

she filed under the Americans with Disabilities Act. Collins claims that she presented

1

sufficient evidence to allow a reasonable jury to conclude that Prudential failed to reasonably accommodate her disability. For the reasons that follow, we will affirm.

## I. FACTUAL BACKGROUND

Since we write only for the parties who are aware of the circumstances underlying this suit, we will not set forth the factual or procedural background except insofar as may be helpful to our discussion. Briefly stated, Prudential claims that Collins had not mastered the financial transactions component of her job by the time of her first 90 day interview although she was able to perform assigned non-financial tasks adequately. Thereafter, Prudential focused her training on the financial aspects of her job. However, according to Prudential, Collins was still unable to perform the financial aspects of her job satisfactorily. On February 2, 2000, after approximately 13 months (11 months beyond the normal 60-day training period for Collins' position), Prudential terminated her employment.

According to Prudential, on January 21, 2000, when Collins knew that she would be terminated in less than two weeks, the Pennsylvania State Office of Vocational Rehabilitation ("OVR") informed Prudential that it was providing services to Collins in order to assess her cognitive status and identify any accommodation that could improve her job performance.

In late April 2000, more than two months after her employment with Prudential had been terminated, Collins was evaluated and diagnosed with Attention Deficit

Hyperactivity Disorder ("ADHD"). It is undisputed that Collins had not been tested, or evaluated by a health care provider for any attention impairment prior to being terminated by Prudential.

## II. DISTRICT COURT PROCEEDINGS

Collins filed a complaint against Prudential alleging that her termination violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* Her ADEA claim alleged that Prudential accommodated a younger employee with an attention deficit disorder. She claimed Prudential gave the younger employee an additional 90 days of training, yet refused to extend a similar accommodation to her. Her ADA claim alleged that she was disabled and that Prudential failed to provide a reasonable accommodation. She included parallel age and disability claims under the Pennsylvania Human Relation Act ("PHRA"), 43 PA. CONS. STAT. ANN. §§ 951 *et seq.*

Prudential eventually moved for summary judgment. The district court denied that motion with respect to the ADEA claim and the ADA failure to accommodate claim, and those claims proceeded to trial before a jury. At the conclusion of Collins' case-in-chief at the ensuing jury trial, the district court granted Prudential's motion for judgment as a matter of law on both the ADA claim and the parallel PHRA claim. The court concluded that Collins was not a qualified individual with a disability. The ADEA and PHRA age claims were submitted to the jury which returned a verdict in favor of

3

Prudential. This appeal followed. The only issue raised is whether the district court erred in granting judgment as a matter of law in favor of Prudential on Collins' ADA claim.[1]

## III. DISCUSSION

### A. Basic statutory framework.

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . terms and conditions of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

In order to establish a *prima facie* case of discrimination under the ADA, an employee must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without

---

[1] We exercise plenary review over the district court's grant of a judgment as a matter of law. *Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396, 400 (3d Cir. 1999). Under Fed. R. Civ. P. 50(a), we view the evidence in the light most favorable to the non-moving party giving the non-moving party the benefit of all reasonable inferences that can be drawn in its favor. *Wittekamp v. Gulf & Western, Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993).

4

reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999) (citation omitted).

"The ADA specifies that an employer discriminates against a qualified individual with a disability when the employer does 'not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'" *Id.* (quoting 42 U.S.C. § 12112(b)(5)(A)).

## B. The Standard Adopted by the District Court

Collins claims that her impairment, ADHD/ADD, substantially limits her major life activities of thinking, learning, concentrating or remembering.[2] She argues that the district court applied an incorrect standard is assessing the substantial limiting effect of her impairment.[3] The district court looked to "whether [Collins'] physical or mental condition precluded or severely restricted or limited [her] in thinking, concentrating, learning and remembering." Collins contends that this "preclusion" standard created an impossibly high burden. She argues:

---

[2]In *Taylor v. Phoenixville School District*, we held that thinking is a major life activity. 184 F.3d at 307. In *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 545, 569 (3d Cir. 2002), we held that general cognitive functions, such as concentrating and remembering, are major life activities.

[3] Collins was not diagnosed with ADHD/ADD until two months *after* she was terminated by Prudential for poor job performance. Nevertheless, we will address the merits of her appeal.

5

> If you use the district court's standard of "preclusion" to
> obtain disability status, than (sic) no employee could ever
> have a disability claim against an employer because he would
> not be able perform (sic) the essential functions of the
> position. Being precluded from thinking, learning,
> concentrating, or remembering, would not allow an employee
> to work, let alone function in society.

Collins believes that she merely had to produce sufficient evidence to allow a reasonable jury to find that she was "substantially limited" in her cognitive functions. She does not explain what means by "substantially limited" in her cognitive functions, and she also ignores the Supreme Court's explanation of that phrase.

In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), the Court explained:

> that to be substantially limited in performing manual tasks,[4]
> an individual must have an impairment that *prevents or
> severely restricts* the individual from doing activities that are
> of central importance to most people's daily lives.

*Id.* at 198 (emphasis added). An impairment that "prevents or severely restricts" activities precludes one from satisfactorily completing them, and we therefore fail to see any material distinction between the district court's alleged "preclusion" test, and the Supreme Court's analysis in *Williams.*

---

[4]Admittedly, in *Williams* the person asserting the disability had a manual impairment, i.e., carpal tunnel syndrome, and not a mental one, i.e., ADHD/ADD, as Collins claims to have. However, since the ADA defines "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of [an] individual," we see no reason why the definition of substantially limited in *Williams* would not apply to mental impairments.

### C. The District Court's Review of the Evidence.

In deciding a motion for judgment as a matter of law, courts must review the record and draw all reasonable inferences in favor of the nonmoving party without weighing the evidence or making credibility determinations. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2002). Collins argues that the district court improperly weighed the evidence when it found that her

> employment record, her academic record, her record of activities and her family experience clearly does not rise to the level of being precluded or severely limited or restricted in those major life activities of thinking, remembering, concentrating and learning.

Collins submits that the district court should have "acknowledged that [she] presented evidence that 'she felt restricted in these areas,' and allowed the jury to decide whether her employment and academic record prove that she is not substantially limited in her cognitive functions."

However, Collins' own conclusory testimony on direct examination constitutes the only evidence of limitations she produced. She testified:

> I have problems learning and remembering and concentrating. It takes me longer to do everything. If I go in the shower in the morning sometimes I'm in there for a half hour. It takes me longer. If I stop to think about something while I'm showering I'll have to go back and wash an arm again because I don't remember – remember if I did that or not.
>   If I'm busy with household tasks, I'll be working in one room and I'll need something from the second room. I'll go into the second room and then I'll start doing things there and

7

forget to go back to the first room even though I was really close to finishing that task.

And you know there's times that people describe that particular scenario as like being blonde or a senior moment, but I don't have moments, I have it all day long everyday.

And I have problems with establishing priorities. Priorities are all one level with me. There's no compartments to put them in. It's all like everything is high, put-out-the-fire priority. That's what causes me to jump from one thing to the other. I want to get to everything at the same time.

I have problems, too, with time, with my scheduling of my time. There's a girlfriend of mine who frequently, when she invites us over, tells me a half hour before the rest of the company so that I get there on time and get the food while it's hot.

When asked how this affects her life, she responded: "Well, if affects everything in my life. It affects my daily living and it affects whatever I do outside the house."

Although we are not unsympathetic to Ms. Collins, this testimony does not establish that she is substantially limited in thinking, learning, concentrating or remembering. We do not intend to be uncharitable in noting that Collins describes difficulties that many people who are not suffering from ADHD/ADD must regularly cope with.

At most, the impact on thinking, learning, concentrating and remembering can be accurately characterized as moderate. However, "[h]ealth conditions that cause moderate limitations on major life activities do not constitute disabilities under the ADA. To hold otherwise could expand the ADA to recognize almost every working American as disabled to some degree." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 724 (8th Cir.

8

2002), *cert. denied*, _ U.S. _, 124 S.Ct. 2346 (2004).

Furthermore, we do not believe that the district court improperly weighed the evidence when it relied on Collins' cross-examination testimony about her past work history, academic achievements and other activities in concluding that she was not substantially limited in the major life activities of thinking, learning, remembering or concentrating. She testified that she had been gainfully employed since her teen years and throughout her adult life. She testified that, when she was in high school, she worked as a part-time supermarket cashier and calculated transactions in her head to make change for customers. After she graduated from high school, she worked for Prudential for seven years doing data processing.

She also owned and operated a bar and restaurant for about six years with other members of her family. She then worked as a bookkeeper and tax preparer for a local accountant, while managing a household and raising two young children. After seven years as a bookkeeper, she attended junior college full time for a year and earned a technician's certificate in accounting. She then became an office administrator and service manager for Terminix. There, she took night courses at the junior college and earned an associate degree in accounting. She graduated *cum laude*, and worked as an office manager for another company, and then worked as an accountant for yet another company. After that, she worked for Prudential on assignment from a temporary employment agency in 1998, before being hired by Prudential as a regular employee in

9

1999.

She testified that she performed well in all of these jobs and did not need any accommodations from any employer or from the junior college. Moreover, while keeping house, raising children, working and going to junior college, she was active in civic and community organizations. She was a member of the "Teddy Bear Patrol," the Girl Scouts (serving 19 years as a troop leader), the Pennsylvania State Advisory Council to federally funded reading and math programs (serving as a Council member and as a parent volunteer in the programs), and the Strategic Planning Commission for her local school district.

This is, to say the least, inconsistent with the limitations in the major life activities of thinking, learning, remembering and concentrating, that she now claims the evidence established. Rather than establish substantial limitations, her testimony clearly shows that her claimed life-long ADHD/ADD affliction did not effect her ability to successfully engage in a wide variety of professional and community activities. The evidence was, therefore, insufficient to allow a reasonable jury to find the substantial limitations she claims.

## D. ADHD/ADD is a disability under the ADA.

Collins argues that our decision in *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565 (3d Cir. 2002) demonstrates that ADHD/ADD is a disability under the

ADA.[5]  Even if so, that conclusion is neither remarkable nor conclusive here.

She next claims that *Gagliardo* endorsed the EEOC regulations defining "substantially limited."  The EEOC's regulations, define "substantially limited" as: "Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j).  The regulations list several factors that should be considered in evaluating whether someone is "substantially limited." These include: "(I) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  *Id.* § 1630.2(j)(2).

We assume that Collins is arguing that she presented sufficient evidence to support a finding that she was substantially limited in the major life activities of thinking, learning, concentrating and remembering under the EEOC's regulations.  However, in *Gagliardo*, we merely mentioned the EEOC regulations. Moreover, the Supreme Court

[5]To the extent that Collins is claiming that there is such a thing as a disability *per se*, Collins is mistaken.  It is clear that "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Williams*, 534 U.S. at 195.  "[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999).  An ADA plaintiff "need[s] to demonstrate that the impairment limits a major life activity." *Williams*, 534 U.S. at 195.

has questioned whether any deference is owed to the EEOC's regulations in this regard. In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479 (1999), the Court noted that "[n]o agency has been given authority to issue regulations implementing the generally applicable provisions of the ADA," and, "[m]ost notably, no agency has been delegated authority to interpret the term 'disability.'" In *Williams*, 534 U.S. at 194, the Court referred to *Sutton* and noted that "[t]he persuasive authority of the EEOC regulations is less clear."

In any event, we do not believe that *Gagliardo* supports Collins' claim that she is disabled under the ADA. There, in affirming the district court's denial of the employer's motion for judgment as a matter of law, we explained:

> First, Gagliardo's physician . . . testified that there was no cure for MS and that MS produced Gagliardo's fatigue.[6] [He] also expressed his opinion as an expert that Gagliardo was substantially limited in her ability to, among other things, learn, work, and think. Second, Gagliardo testified she experienced muscle spasms and fatigue. Third, four of Gagliardo's coworkers testified as to her fatigue and muscle spasms. Fourth, Gagliardo produced evidence that her supervisor recognized her memory problems, having provided Gagliardo with video and audio tapes to assist Gagliardo in overcoming her memory problems. Lastly, Gagliardo's son and her husband similarly testified that she was often fatigued and had trouble concentrating and focusing.

311 F.3d at 569-70.

---

[6]Gagliardo's "fatigue affected her ability to think, focus and remember." 311 F.3d at 567.

12

However, Collins' evidence does not establish the kind of limitations evident in *Gagliardo.* Moreover, her cross-examination testimony about her work, academic, and community involvement contradicts her claim that her ADHD/ADD substantially limits her abilities to think, learn, remember and concentrate.[7]

Dr. Harvey, the psychologist, did diagnose her with ADHD/ADD. However, his testimony about Collins' limitations was simply a recitation of the things Collins told him when he first interviewed her. He testified:

> A: Yes, the concerns she raised on the history form that she completed and during the initial interview had to do with her concerns about her rate of work and productivity. She states that it always took her longer to do tasks and that she typically needed to budget extra time.
> She felt – she described that she would get overwhelmed with a deadline. She talked about difficulties focusing. She stated that she needed to go over her work several times to make sure it was correct. She described times when it felt like her brain kind of froze up or shut off even on a task that she knew well, she just couldn't remember how to do it. She also described organizational difficulties.

Dr. Harvey did not treat Collins and his contact with her was extremely limited as she was treated by Dr. Christine Terry. We are therefore not convinced that *Gagliardo* supports Collins' ADA claim.

---

[7]Collins claims that she has had ADHD/ADD since childhood. Assuming that is true, it would seem that the problems she had at Prudential would have plagued her for her entire life and would have prevented her from achieving the things she did before she was hired by Prudential. She is not like the plaintiff in *Gagliardo*, who had a good work history until she developed MS later in life.

## E. Mitigating measures.

In *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999), the Supreme Court held

that an alleged disability under 42 U.S.C. § 12102(2)(A) must be evaluated in light of

any mitigating measures.[8]  The Court wrote:

> A person whose physical or mental impairment is corrected
> by medication or other measures does not have an impairment
> that presently "substantially limits" a major life activity.  To
> be sure, a person whose physical or mental impairment is
> corrected by mitigating measures still has an impairment, but
> if the impairment is corrected it does not "substantially
> limi[t]" a major life activity.

527 U.S. at 483.

The district court ruled in the alternative that any ADHD/ADD impairment

Collins may have is corrected with medication;  thus, she is not disabled. Collins testified

that her impairment is corrected when she timely takes her medication – Adderol and

Ambien.  She admitted that Adderol, which she takes for her ADHD/ADD, helps her

"focus better," but that it wears off after four hours.  She also testified that she takes

Ambien because she has trouble sleeping.  She is careful not to take the Adderol too late

in the day because it will keep her awake.  In her brief, Collins claims that she has to take

Ambien to counteract Adderol and, therefore "the medications actually make Collins

---

[8]In *Sutton*, twin sisters, who sought to be airline pilots, were myopic, a sight
impairment that is correctable with appropriate lenses.  Because the impairment was
corrected by either eyeglasses or contact lenses, the Court held that the sisters, who wore
glasses, were not disabled under the ADA.

more impaired than the general population." Finally, Collins testified that the Adderol doesn't cure her impairment.

Although we need not reach it, we believe that the district court's alternative holding is correct. The test for determining the effect of mitigating measures is not whether the mitigating measures constitute a cure.

### F. Evidentiary issue.

Collins argues that the district court erred in sustaining Prudential's objections to two questions by which Collins' counsel sought to elicit expert testimony from Dr. Harvey.[9] However, in a letter sent prior to trial, Collin's counsel explicitly disclaimed any intent to call Dr. Harvey as an expert witness. Counsel claimed, however, that Dr. Harvey should be considered Collins' "treating physician"[10] and permitted certain latitude in his testimony as a treating physician. Prudential responded by filing a motion *in limine* seeking to preclude Dr. Harvey from testifying at all because Collins failed to comply with Fed.R.Civ.P. 26(a)(2). The district court held that Dr. Harvey was not an expert witness. His testimony was allowed as a treating physician and he was allowed to testify about his diagnosis and treatment only.

_____

[9]We review the district court's decision to admit or exclude evidence under an abuse of discretion standard. *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382-83 (3d Cir. 2002). When a ruling on the admission of evidence implicates the interpretation of a legal standard, such as the Federal Rules of Evidence, the review is plenary. *Id.*

[10]Collins' counsel insists that Dr. Harvey was Collins' treating physician even though Dr. Harvey is not a physician, but a psychologist, and testified that Dr. Terry treated Collins, and he did not.

At trial, Collins' counsel asked Dr. Harvey the following two questions:

> Q: How does your diagnosis of [ADD] affect Leona Collins life?

> Q: What did you notice in connection with Leona Collins and the fact that you had diagnosed her with [ADD]?

Prudential objected on the grounds that the questions went beyond diagnosis and treatment and required an expert opinion. The district court sustained Prudential's objections.

Collins concedes that these questions required Dr. Harvey to give opinion testimony, but argues that Harvey's opinion testimony was admissible under Fed.R.Evid. 701(b).[11] In support of that argument, she relies on our decision in *Lauria v. National Railroad Passenger Corp.*, 145 F.3d 593 (3d Cir. 1998), where we said:

> We have noted . . .that the modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination. Therefore, an opinion is "helpful" to the trier of fact within the meaning of Rule 701(b) if it aids or clarifies an issue that the jury would not otherwise be as competent to understand. As long as the circumstances can be presented with greater clarity by stating an opinion, then that opinion is helpful to the trier of fact.

*Id.* at 600-01 (citations and most internal quotations omitted).

---

[11]Which provides: "If the witness is not testifying as an expert, the witness' testimony in the form of an opinion or inferences is limited to those opinions or inferences which are . . . . (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue . . . ."

However, we decided *Lauria* before the 2000 amendment to Rule 701. That amendment added a new requirement for admissibility, subsection (c). Rule 701(c) provides that if a witness is not testifying an as expert, his/her opinion testimony can not be "based on scientific, technical, or other specialized forms of knowledge within the scope of Rule 702," i.e., the rule governing admissibility of expert testimony. The Advisory Committee notes to Fed.R.Evid. 701 provide:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. 701, 2000 Advisory Committee Note.

Here, the district court had already ruled that Dr. Harvey was not an expert witness and that he could testify only as to diagnosis and treatment. Collins does not challenge that ruling. The questions at issue would have elicited an expert opinion in violation of Rule 701(c). Therefore, the district court correctly sustained Prudential's objections.

### G. Prudential's Knowledge of Collins' Disability.

Prudential argues that even if we find that Collins was a qualified individual with a disability, she is not entitled to relief because it was unaware of that disability. Prudential argues that Collins did not even know she may be disabled until she was

17

diagnosed with ADHD/ADD, and that was not until *after* she was fired. That argument has considerable force. *See Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995).

As recited earlier, "an employer discriminates against a qualified individual with a disability when the employer does 'not mak[e] reasonable accommodations to the *known* physical or mental limitations of the individual. . . .'" *Taylor*, 184 F.3d at 311 (citing 42 U.S.C. § 1211(b)(5)(A)) (emphasis added). Thus, with certain exceptions not relevant here, there can be no discrimination under the ADA unless the employer knows that an employee is disabled. Of course, Collins argues that Prudential knew that she may have a disability because she told her supervisor, Zaleskas, that she was seeking assistance from the OVR.[12] According to Collins, Zaleskas responded: "[O]h, what does that mean, we have to give you adaptations or accommodation." Further, Collins claims in her brief that both Zaleskas and HR manager, Colarusso, knew that OVR was a government agency that helped disabled workers. Finally, Collins points out that Nancy Murray, the OVR representative, wrote a letter that informed Prudential that Collins was seeking accommodations because of her "cognitive status."

However, Collins is being less than forthright in pressing this point. Both Zaleskas and Colarusso testified without contradiction that they did not know what OVR

---

[12] Prudential's decisions concerning Collins, i.e., placement in performance counseling, job monitoring and refusal to transfer, were made before Collins told her supervisor that she had contacted the OVR.

was or what it did. Moreover, Murray's letter is not as helpful as Collins claims. It was dated January 18, 2000 and Prudential received it approximately two weeks before Collins was fired. It reads in relevant part:

> [Leona Collins] has requested and applied for vocational rehabilitation services in order to identify her current cognitive status and to determine whether or not there were any job accommodations that could improve and enhance her employability with Prudential Investments.

Even if we interpret the letter as Collins suggests, it adds little to her claim.

Prudential received Murray's letter on January 21, 2000, when Collins was in stage three of performance counseling and 12 days from termination. That same day, Prudential managers participated in a conference call with an OVR representative who said only that Collins was being tested by OVR to see if she could improve her job performance. Prudential claims that prior to its decision to fire Collins for poor performance, no one from OVR ever mentioned that Collins had a disability or ADHD/ADD, and Collins does not dispute that claim.

Accordingly, on this record, we do not agree that OVR's statements that it was going to assess Collins' cognitive abilities are enough to inform Prudential that Collins may have a disability or may need an accommodation. *See Kaltenberger v. Ohio College of Physicians*, 162 F.3d 432 (6th Cir. 1988).[13]

_____

[13] *Ohio College of Physicians*, and the cases it relies upon arose under Title III of the ADA (the public accommodations provision), and not under Title I (the employment provision) as Collins' case does. However, the cases are nevertheless relevant to our

Collins' situation is quite unlike that of the plaintiff in *Taylor v. Phoenixville School District*, where we discussed the type of notice required before an employer is obligated to begin the interactive process with an employee to determine whether a reasonable accommodation is necessary or possible. 184 F.3d at 313. There, Taylor began suffering from bipolar disorder after performing extraordinarily well on her job for 20 years. As things progressed, her employer learned that she was hospitalized in a psychiatric institution after becoming manic and psychotic at work. Clearly, those facts would put an employer on notice that an employee might be suffering from a disability. Collins' case is not even remotely similar.

## H. Major Life Activity of Working.

Collins did not claim that she was substantially limited in the major life activity of working during the trial. However, she now suggests as much in her appeal. She now claims that Calvin Anderson testified as her expert that she could not do corporate taxes on a full-time, long-term basis and that corporate taxes are associated with a broad range of jobs associated with her associate degree in accounting. She fails to mention that Anderson was her economic expert, not a vocational or medical expert. Accordingly, even if we were to entertain this argument for the first time on appeal, we would find it has no merit. *See Sutton*, 527 U.S. at 492.

## V. CONCLUSION

analysis.

20

For all of the above reasons, we will affirm the district court's grant of judgment as a matter of law to Prudential on Collins' ADA failure to accommodate claim.

———————