[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-10691

_____

D.C. Docket No. 97-02335-CIV-T-24A

CHARLOTTE J. CHENOWETH,

Plaintiff-Appellant,

versus

HILLSBOROUGH COUNTY, a political
subdivision of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 10, 2001)**

Before  CARNES, COX and NOONAN*, Circuit Judges.

NOONAN, Circuit Judge:

---

* Honorable John T. Noonan, Jr., U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Charlotte J. Chenoweth appeals the judgment of the district court for the middle district of Florida. The principal issue on this appeal is whether inability to drive to work for six months qualifies as an impairment substantially limiting a major life activity under the Americans with Disabilities Act, 42 U.S.C. § 12102(2)(A) (the ADA) or under the Rehabilitation Act, 29 U.S.C. § 794. Recognizing that many Americans do drive to work and that in rural areas public transportation may sometimes not be available when needed, we nonetheless hold that such inability does not qualify under either act, and we therefore affirm the summary judgment granted by the district court.

FACTS

Chenoweth is a well-educated, 41-year-old woman with over fourteen years of nursing experience. She has worked for Hillsborough County (the County) as a registered nurse since March 27, 1995, employed as a Utilization Review/Network Care Manager Nurse in the County's Department of Health and Social Services. Her job is to review the files of hospital patients for whom the County is financially responsible. According to Chenoweth, she was able to perform some of these reviews at home on her own computer. She lived in Pinellas County and

2

normally drove to her job, also driving between different sites where she carried out file reviews for the County.

In January 1997 Chenoweth suffered a seizure and was subsequently diagnosed as having focal onset epilepsy. On April 30, 1997, her physician prescribed Lamictal as medication. He also advised her not to use a stove or to bathe by herself and not to drive at all until she had gone six months without experiencing a seizure. One effect of the medication was to increase the risk of bearing a child with birth defects. Her ability to do her regular job was not affected. She resumed driving sometime between January and March 1998.

In the period from April 1997 to early 1998 Chenoweth sought accommodation from the County because she could not drive. She proposed that she work two days at home and that her schedule at the office be made variable to accommodate her transportation needs. The County agreed to eliminate her driving between different work sites, but did not accede to her other requests.

PROCEEDINGS

On September 23, 1997, Chenoweth brought the present suit, alleging a variety of claims under federal and state law, the majority of which have been either dismissed or settled. On December 16, 1999, the magistrate judge denied

3

Chenoweth's motion for summary judgment on the ADA and Rehabilitation Act claims and granted the County's motion for summary judgment on them, finding that Chenoweth was not disabled within the meaning of these laws.

Chenoweth appeals.

ANALYSIS

Under the ADA a disability is "a physical or mental impairment that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2)(A). Major life activities are enumerated by EEOC regulation as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Although this enumeration is not exhaustive, driving is not only absent from the list but is conspicuously different in character from the activities that are listed. It would at the least be an oddity that a major life activity should require a license from the state, revocable for a variety of reasons including failure to insure. We are an automobile society and an automobile economy, so that it is not entirely farfetched to promote driving to a major life activity; but millions of Americans do not drive, millions are passengers to work, and deprivation of being self-driven to work cannot be sensibly compared to inability to see or to learn. *Colwell v. Suffolk*

4

*County Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998); *cf. Anderson v. N.D. State Hosp.*, 232 F.3d 634, 636 (8th Cir. 2000).

Chenoweth's case, then, depends on the argument that her inability to drive substantially limited her ability to work. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999) (working assumed to be major life activity). We look at her individual circumstances. *Id.* at 483. Chenoweth produced no evidence that she was, in fact, unable to perform her job. Neither did she offer any evidence showing that the County regarded her as disabled to perform her work. Nothing in the record prevented summary judgment on her claim of disability to work. On this appeal Chenoweth points also to the effect of epilepsy on her reproductive capacity. Childbearing is a major life activity, *Bragdon v. Abbott*, 524 U.S. 624 (1998). But the increase in risk in this regard had no relevance at all to her work for the County or to her request to the County for accommodation.

Accordingly, the judgment for the County is AFFIRMED.