Marilyn CHAMPLIN, Plaintiff–Appellant,

v.

WONEWOC–CENTER SCHOOL DISTRICT, Defendant–Appellee.

No. 02–4369.

United States Court of Appeals, Seventh Circuit.

Submitted June 18, 2003.*

Decided June 30, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

**446**

Before MANION, ROVNER, and DIANE P. WOOD, Circuit Judges.

### ORDER

Marilyn Champlin, a speech and language pathologist, sued her former employer, Wonewoc–Center School District, alleging that Wonewoc failed reasonably to accommodate a disability relating to her eyesight in violation of the Americans with Disabilities Act (ADA). 42 U.S.C. § 12101 *et seq.* The district court granted summary judgment for Wonewoc, and we affirm.

Champlin worked part-time for Wonewoc from 1985 through the 1999–2000 school year. Until the end of the 1997–1998 school year, she was scheduled to work eight-hour days on Tuesdays, Thursdays, and alternate Wednesdays. During those years Champlin usually drove to work, but during the winter months she ususally received rides from her husband or a friend. When school started again in 1998, however, Wonewoc changed Champlin's schedule to three hours per day for each weekday, in order to give students and parents more access to her. Wonewoc gave Champlin the option of working during mornings or afternoons. She instead requested her old schedule, asserting that working either mornings or afternoons would force her to drive in unfavorable conditions. She provided a letter from her doctor stating that she had undergone surgery for cataracts and suffers from "very high myopia" that affects her depth perception and causes distortion. The doctor further explained that her vision problem "causes her difficulty in driving especially in conditions of glare or reduced contrast such as night or foggy days" and "she has someone drive her under these conditions for her feelings of safety and those of others."

Based on this letter, Wonewoc gave Champlin a third option of working 10:00 a.m. until 2:30 p.m. (with a half-hour lunch) so that she would not have to drive in the early morning (when glare or fog were likely) or in the evening. Champlin again requested her old schedule as an accommodation. When her request was denied, Champlin began the 1998–1999 school year working the 10:00 a.m. to 2:30 p.m. schedule. She worked until January 5, 1999, when she stopped working because of reported stress. While working this schedule, she drove herself to work each day except for approximately fifteen days when she received a ride from her husband or a friend. Champlin returned to work at the start of 1999–2000 school year; she again requested and was denied her old schedule

as an accommodation. She then requested and was given a morning schedule. She worked until January 18, 2000, when she stopped working, citing depression and an inability either to drive under wintery conditions, or to obtain alternative transportation. (Champlin was unwilling to remain in the school building during her off-hours while she waited for her husband's workday to end.) During the fall she had driven herself each day except for approximately fifteen days when she received a ride. Her contract was not renewed for the 2000–2001 school year.

When the district failed to return her to her old schedule during the 1999–2000 school year, Champlin filed a discrimination charge with the EEOC, alleging the district failed reasonably to accommodate her disability. In April 2002, after receiving a right-to-sue letter from the EEOC, Champlin filed this lawsuit against Wonewoc. She raised claims based on Wonewoc's failure to provide a reasonable accommodation, disparate treatment, and retaliation. Wonewoc filed a motion for summary judgment, which the district court granted. It concluded that Champlin's disparate-treatment and retaliation claims were not properly before the court because she did not raise them in her EEOC charge, and that Champlain did not qualify as disabled because her visual impairment did not substantially limit her in the major life activities of seeing or working.

We review the district court's decision *de novo,* construing the facts and drawing reasonable inferences in Champlin's favor. *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship,* 209 F.3d 678, 682–83 (7th Cir.2000). The ADA requires employers reasonably to accommodate known disabilities of otherwise qualified employees. 42 U.S.C. § 12112(b)(5)(A); *Green v. Nat'l Steel Corp., Midwest Div.,* 197 F.3d 894, 897

(7th Cir.1999). The ADA defines disability as (1) "a physical or mental impairment that substantially limits one or more of the major life activities"; (2) "a record of such impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Sinkler,* 209 F.3d at 683. Champlin contends that she satisfies the first definition, namely, that her visual impairment substantially limits her major life activities of seeing, working, and driving. In evaluating this claim, we must decide whether Champlin has an impairment, identify the major life activities limited by the asserted impairment, and evaluate whether the limitation was substantial. *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Sinkler,* 209 F.3d at 683.

Wonewoc concedes, and the evidence supports, that Champlin suffers from a visual impairment. Two of the life activities she identifies, seeing and working, are major life activities. *Bragdon,* 524 U.S. at 638–39, 118 S.Ct. 2196. Thus, the relevant inquiry is whether Champlin's visual impairment substantially limited her ability to see and work. Her impairment did not substantially limit her ability to see as necessary to perform many of her tasks at the school. She was able to read, write, work on a computer, walk around, meet with students and parents, and otherwise complete all of her work duties in a satisfactory manner. And outside of work, she drives in good conditions, has an unrestricted Wisconsin driver's license, takes care of herself, and engages in recreational activities such as gardening. Nevertheless, her impairment did limit her ability to attend work, particularly in winter, when driving conditions were poor. She explained that, when she could not drive, her husband could drive her two or three days per week but could not drive her every day or at times consistent with a half-day schedule.

We have explained that "[g]etting to and from work" is not itself a separate major life activity. *Sinkler*, 209 F.3d at 685. Thus, Champlin's inability to drive under certain conditions is relevant only if it limits an independent major life activity. Driving is generally not considered a major life activity. *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329–30 (11th Cir.2001); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir.1998). And Champlin did not submit the kind of evidence necessary to show that her impairment substantially limited her ability to work, *i.e.* that her impairment significantly restricted her from performing a class or range of jobs for someone with her training. *EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1017 (7th Cir.2001).

Taking the facts in the light most favorable to Champlin, we assume that her impairment limited her ability to attend work. Attendance, however, is an essential of most jobs. *See EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948–49 (7th Cir.2001) (en banc). This was the case here because Wonewoc, through its school board, had decided that Champlin (along with other employees whose schedules were also changed) had to attend work five days per week so that students and parents would have sufficient access to her. Therefore, Champlin first needed to show that she could attend work regularly in order to show that she was a "qualified individual" under the ADA. *See id.* The accommodation she was seeking was fundamentally inconsistent with Wonewoc's legitimate job requirement, and we do not second-guess an employer's right to describe the essential requirements of a job. See *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir.1998).

The district court also determined that Champlin was precluded from bringing her retaliation and disparate-treatment claims because she failed to present those claims in her EEOC charge. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550–51 (7th Cir.2002) (retaliation); *Green*, 197 F.3d at 897–98 (disparate treatment). We agree. Finally, Champlin raises a number of additional claims in her appellate brief for the first time, including claims based on the Rehabilitation Act, emotional disability, age discrimination, and state law. Because these claims were not raised in the district court, they are waived. *See Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir.2001); *Denius v. Dunlap*, 209 F.3d 944, 958 n. 10 (7th Cir.2000).

AFFIRMED.